UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KOCHURANI M. NICHOLAS
          Plaintiff,                        CIVIL ACTION NO. 09-11227

       v.                                DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF               MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

      This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits. Plaintiff filed for disability benefits alleging that she had been disabled since January 2001 due to back pain, depression, and a bad memory. Following her initial denial, plaintiff had a hearing before an ALJ at which she was represented by an attorney. The ALJ found that plaintiff was not disabled because, despite her impairments, she could perform a significant number of jobs identified by the vocational expert. Plaintiff contends that this finding is not supported by substantial evidence, specifically that the ALJ failed to fully consider her mental impairment. Defendant contends otherwise. For the reasons discussed in this report, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

**Standard of Review**

The Commissioner's final decision is subject to judicial review under 42 U .S.C. §

405(g), which provides, *inter alia:* "The findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "

'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). A court " 'must affirm the

Commissioner's conclusions absent a determination that the Commissioner has failed to apply

the correct legal standards or has made findings of fact unsupported by substantial evidence in

the record.' " *Colvin v. Barnhart,* 475 F.3d 727, 729-30 (6th Cir.2007) (quoting *Walters v.

Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997)).  If the Commissioner's decision is

supported by substantial evidence, the court must defer to that decision " 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.' " *Warner

v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004) (quoting *Wright v. Massanari,* 321

F.3d 611, 614 (6th Cir.2003)).

Disability is the inability "[t]o engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months." *Id.* § 1382c(a)(3)(A). An individual will only be determined to b under a disability if

his impairment or impairments are of such severity that he is not only unable to do his previous

- 2 -

work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id.* § 1382c(a)(3)(B).

The ALJ, in determining whether a claimant is disabled, conducts a five-step analysis:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner*, 127 F.3d 525, 529 (citing 20 C.F.R. § 404.1520).

Under the five-step inquiry, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step. *Jones v. Comm 'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003). To prevail at step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual

functioning capacity," *id.,* taking into account factors such as age, education, and skills. *Walters,*

127 F.3d at 529.

The issue before the court is whether to affirm the Commissioner's determination.  In

Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining
> whether the Secretary's findings are supported by substantial
> evidence and whether the Secretary employed the proper legal
> standards in reaching her conclusion.  42 U.S.C. §405(g);
> Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed.
> 2d 842 (1971).  Substantial evidence is more than a scintilla of
> evidence but less than a preponderance and is such relevant
> evidence as a reasonable mind might accept as adequate to support
> a conclusion.  Consolidated Edison Co. v. NLRB, 305 U.S. 197,
> 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938).  The scope of our
> review is limited to an examination of the record only.  We do not
> review the evidence *de novo*, make credibility determinations nor
> weigh the evidence.  Reynolds v. Secretary of Health and Human
> Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

**Background**

Plaintiff, a resident of India, appeals the denial of social security benefits on the ground

that the defendant did not properly evaluate her psychiatric disability.  At the time of the

decision, plaintiff was 49 years old.  Plaintiff has a college education (undergraduate and

Master's degree from Kerala University in India) and past work as a high school teacher in India

and as a chemist with the City of Detroit Water Department. (Tr. 172-176)  Plaintiff stopped

working in January, 2001 to care for her husband after he became ill and because she had "too

much stress."  Plaintiff returned with her ill husband to her home country where she lived until

- 4 -

2005.  During that time, she drew a non-duty disability pension from the City of Detroit.  In
2005, she returned to Detroit to ensure continuation of her pension benefits from the City of
Detroit and to apply for Social Security disability benefits.   Her pension application was
approved and further yearly reviews were determined to be unnecessary.  After that decision, she
returned to India later in 2005.  Her husband passed away in 2006. (Tr. 174)  She returned to
Michigan shortly before the social security hearing in 2008 and was scheduled to return to India
the following month. (Tr. 178-180, 190-191) She has no home in either India or Michigan, and
she stays in the homes of various relatives.  She contends that she is psychiatrically disabled.  It
is unclear whether she is an Indian national or an American citizen.[1] (Tr. 197-199)

**Discussion**

In this case, the ALJ determined that claimant carried her burden of proof through the
first four steps, and demonstrated that she was "unable to perform any of her past relevant work"
under 20 C.F.R. § 404.1565. This court's inquiry is thus limited to whether substantial evidence
supports the ALJ's determination at step five of the inquiry--namely, whether substantial
evidence supports the ALJ's determination of claimant's RFC and the availability of jobs in
significant numbers that accommodate her limitations.

Plaintiff argues that she is unable to work because she experienced psychiatric problems
that made her feel as if she were "living in a different world." (Tr. 181) She claims to hear voices
and birds that told her to do things like drive around following planes and helicopters.  (Tr. 181-

---

[1]If an Indian national, the proper venue for her case would be Washington DC.  She
claims U.S. citizenship but was unable to produce documentation.  The ALJ determined to let
her proceed in Michigan because her claim had been pending here for a long time.

182) She said that her ability to concentrate was impaired and that she often had difficulty

completing tasks.  She did not like to socialize with people because she thought they could read

her mind. (Tr. 181-188)  Her doctor (in India) prescribed medication, but it made her sleepy.

She has no friends.  She got along well with family and generally with people, but occasionally

got irritated with her son or sister and sometimes with her neighbors.  She spent a great deal of

time in her room. (Tr. 184-190)

Plaintiff's sister testified that plaintiff was a danger to herself because the voices told her

to do things like drive around after planes and birds. (Tr. 193-194)

**The Medical Evidence**

As noted by the ALJ, the medical evidence is fairly sparse.  Plaintiff had little or no

treatment for any mental impairment in the United States.  She was granted a non-duty disability

in 2001 from the City of Detroit based on a brief letter from Dr. Reginald O'Neal who indicated

that he received a letter from her psychiatrist in India.  Neither the letter nor a summary of the

information was included in his communication to the Board of the Retirement System.  Dr.

O'Neal reports that plaintiff (who is referred to as Mr. Kouchurani) has mood swings and

irritability along with poor concentration, according to information that he received from Dr.

K.V. Mathews MD in a letter dated May 14, 2001.  Plaintiff was not examined by Dr. O'Neal

until 2005. (Tr. 111-115)   In January, 2002, Dr. O'Neal reports that plaintiff's sister advises that

plaintiff is in India receiving treatment.  Plaintiff did not return to the United States for her

scheduled examination. (Tr. 114) In January, 2002, Dr. O'Neal states that he received a letter

from the psychiatrist treating plaintiff in India and the diagnosis was depression and psychosis.

- 6 -

(Tr. 113) A similar letter was sent in the next year.  It reported that plaintiff was on Olanzapine.

(Tr. 112)  Finally, in September, 2005, Dr. O'Neal met and examined plaintiff.  Plaintiff stated

that she was taking Zyprexa 5mg and Prozac 20 mg, three times a day. (Tr. 111) She was

oriented to person, place, and time.  She recalled 2 of 3 items after 5 minutes but could not do

serial 7 subtraction.   She answered questions only yes or no; there was no spontaneous speech.

Plaintiff reported that she was no longer hearing voices or experiencing visual hallucinations, but

continued to have a fear of crowds which caused panic and the sensation of being unable to

breathe. (Tr. 111)   Dr. O'Neal recommended the continuation of the non-duty disability without

further need for review.

A few months later, in February, 2006, plaintiff had a consultive psychological

evaluation performed by Dr. Mathew P. Dickson.  Plaintiff was in good contact with reality and,

contrary to the examination by Dr. O'Neal, her speech was unimpaired. (Tr. 118) Her stream of

mental activity was spontaneous and well-organized.  Plaintiff had no hallucinations, obsessions,

thoughts controlled by others, or unusual powers.  She described feeling that the TV was giving

her messages of instructions and that others were listening to her.  She denied suicidal or

homicidal ideation.  She stated she had some difficulty sleeping.  Her affect was appropriate and

she stated that she felt "down" most of the time.   With respect to her memory, she did

surprisingly poorly on the test to repeat four numbers forward.   She had not seen a doctor since

August, 2005 when she departed India for the United States.  She was not currently seeing any

psychiatrist or other mental health professional, although the doctor commented that she was

taking some medications which should have required ongoing supervision.   Plaintiff denied any

- 7 -

history of psychiatric hospitalization. (Tr. 116)   She stated that she could count money and pay

bills. (Tr. 117)  After considering all the responses, the doctor's conclusion contained the

following:

> "I am puzzled by this exam.  I did not suspect malingering from the presentation of the
> [plaintiff or her sister].  I was, however, surprised by her poor performance on digit span
> and simple subtraction.  After the digit span I administered the Rey's and she scored only
> 8, which is also surprisingly poor, and typically suggestive of malingering."

Dr. Dickson then related additional testing results, all of which indicated significant

malingering and exaggeration of symptoms.  It also stood out for him that neither plaintiff nor

her sister reported significant cognitive deterioration.  She seemed to try and present with

schizophrenia, yet, as he noted, the diagnosis of schizophrenia would be most unusual because

schizophrenia would present much earlier in a person's life.  The diagnosis in her 40s would be

very late in life for such a condition to manifest.  Because of all the inconsistencies and questions

about her status, he stated that he was "left with significant doubt" that the mental status she

displayed was valid. (Tr. 119) He assessed her GAF at 45. (Tr. 120)

Plaintiff's mental status was reviewed based on the records; the mental residual

functional capacity assessment concluded that plaintiff could do unskilled work. (Tr. 125-143)

Plaintiff's psychiatrist in India submitted reports which summarized his treatment of her

from 2002 through 2006 in four paragraphs.  He reported paranoid ideation and driving her car

around ending up in a lake which led to a psychiatric consultation and treatment in the U.S.A.

He reported overspending and unnecessary time on the computer and feelings of suspicion. He

diagnosed schizophrenia.  (Tr. 146) Subsequently, he saw her about once a month in 2006

- 8 -

through 2008.  In this summary, he notes that she has feelings of depression, but no psychotic features.  She has sleep difficulties and low self esteem.  She reports hearing occasional voices but knows they are not real.  (Tr. 148-151)

On March 2, 2006, about one month after the initial evaluation by Dr. Mathew Dickson, an individual identifying himself as "Dr. Mathew" called the State of Michigan disability service and reported that he had seen plaintiff for a delusions, hallucinations, and depression from January 19, 2001 through May 4, 2001 on a weekly basis.  No records from the treatment were submitted to the agency.

In August, 2008, plaintiff underwent another evaluation by Dr. Dickson PhD.  On this occasion, the sister was not present.  Dr. Dickson noted that plaintiff's "very high E-Score of 39 on the Dot Counting Test strongly suggested under-representation of abilities and is found in persons engaging in a high degree of embellishment or symptom magnification."  The doctor found her not to be credible and her fairly sophisticated attempt to misrepresent herself during the evaluation was "in itself, inconsistent with the psychotic symptoms she is claiming." Consequently, while he "may have had some uncertainty regarding the first exam," on this second exam, it is his "strong impression that she exaggerated her current symptoms." (Tr. 156)

At the hearing, plaintiff's responses also are inconsistent with psychotic symptoms and her claims of disabling mental impairment.  Her cognitive abilities were well demonstrated in her responses to questioning by the ALJ.  She could state her U.S. address and her Indian address which she also could spell.  She knew the town in India had changed its name and she knew the current name and past name of the town and could explain when it changed. (Tr. 169-170)   She

explained her method of travel to the United States, her level of education in India, and her past

employment. (Tr. 172-176)   She described her husband's illness, Huntington's Chorea.

However, on some occasions, she says she has a son and a daughter (eg Tr. 180) and on others

only the son (eg Tr. 175).  Plaintiff's sister testified that plaintiff was still hearing voices and

spends a lot of time in her room at her sister's house. (Tr. 196)

The vocational expert testified that if plaintiff could do simple, routine, and repetitive

work activities and had no physical impairment, and could tolerate superficial contact with

supervisors and coworkers, but not the general public, then she could do assembly type positions

(2700), packer positions (7000), and inspector positions (3200 jobs).

**Plaintiff's Arguments**

Plaintiff alleges that her mental impairment is disabling.  She lists several reasons why

the mental impairment was not properly considered by the ALJ.  None of them are persuasive.

*1. The ALJ erred when posing hypothetical questions about plaintiff's ability to do*

*simple, repetitive tasks and non-stressful work activities in that he disregarded Dr. O'Neal's*

*determinations, the initial examination of Dr. Dickson with a GAF of 45, Dr. Chand's opinions,*

*and Dr. Tasai who moderately restricted her work activities; the ALJ only considered Dr.*

*Dickson's conclusions that plaintiff exaggerated her symptoms.*

The ALJ appropriately considered all of the medical opinions. Dr. Chand's brief reports

from only his last two years of seeing plaintiff do not support his conclusion that plaintiff was

totally disabled.   In addition, plaintiff has not established that Dr. Chand is an acceptable source

of medical opinions and at most he seems to be an internist, not a psychiatrist. No specific work-

- 10 -

preclusive functions were identified by him and the ALJ appropriately gave the opinion little weight.  In addition, Dr. O'Neal's opinion is even less worthy of consideration because he relied only on Dr. Chand's summary for four years and then saw plaintiff one time before determining that she was entitled to continued disability retirement benefits from the City of Detroit.  His report is very cursory and reflects no mental status examination.  Dr. Dickson is the only mental health professional who reported performing mental status examinations and reported the results.  His determination of a GAF of 45 would be meaningful only if valid, but his suspicion of the invalidity of her mental impairment on first examination and strong conclusion of the same on the second examination belies reliance on that GAF.  His opinion is that plaintiff has exaggerated her symptoms and was only mildly limited in her ability to perform complex tasks and interact with others.  The ALJ properly relied on this opinion.

> *2.  No psychiatric review technique form was completed.*

The ALJ thoroughly discussed the functional limitations of plaintiff due to her alleged mental impairment.  20 CFR § 404.1520(a)(d)(2). The requirement to append a Psychiatric Review Technique Form was eliminated in August 2000.  *Collier v. Commissioner of Social Security*, 108 Fed. Appx 358, 362 (6th Cir 2004).  Plaintiff's argument has no basis in law or fact.

> *3.  Schizophrenia meets Listing 12.03(C) and plaintiff's schizophrenia meets that Listing.*

It is true that schizophrenia meets the Listing, but there is no evidence that plaintiff's mental condition meets that Listing.  It is not accompanied by the necessary criteria (the B and C criteria) as she does not have marked restriction of daily living, marked difficulties in maintaining social functioning, or marked difficulty with maintaining concentration, persistence

or pace.  Neither has plaintiff experienced repeated episodes of decompensation. She is

somewhat self-restricted in her habits, but generally gets along well with others, reads in two

languages, and has been able to travel between the United States and India, pay her bills, count

money, and independently take care of her personal needs.  There was no evidence of any

cognitive impairment and arguably no basis for the diagnosis.

It should be noted that only Dr. Chand opines that plaintiff has schizophrenia.  Dr.

Dickson concludes that she doesn't, based on the nature of the condition as well as on her

examination. Dr. Tsai (a non-examiner) accepted Dr. Chand's opinion, but still found that

plaintiff could work.  Pursuant to the Listings, schizophrenia is characterized by a loss of contact

with reality (psychosis), hallucinations, delusions, and abnormal thinking.  Plaintiff did not have

those conditions.  It is a disease that typically manifests itself in the late teens through twenties;

plaintiff's condition did not occur until she was in her late 40s, lending credence to Dr.

Dickson's conclusion that she was malingering and exaggerating her symptoms.  Plaintiff has

not been psychiatrically hospitalized and did not have abnormal thinking.  Upon examination by

Dr. Dickson, she had no delusions or  hallucinations, obsessions, thoughts controlled by others,

or unusual powers.  While she reported at one time hearing voices telling her to drive certain

places, she later stated that she no longer heard voices or if she does, she knows they are not true.

She had no evidence of schizophrenia at the examination by Dr. Dickson and indeed, it was his

opinion that she was malingering, exaggerating her symptoms, and essentially faking her

psychosis.

**Substantial Evidence Supports the ALJ's Conclusion**

- 12 -

The ALJ is "charged with the responsibility of observing the demeanor and credibility of witnesses therefore his conclusions should be highly regarded." *Bradley v. Sec'y of Health & Hum. Servs.,* 862 F.2d 1224, 1227 (6th Cir.1988). Discretion is "vested in the ALJ to weigh all the evidence." *Id.* On review, "we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones,* 336 F.3d at 476. In reviewing an ALJ's credibility determination, "we are limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record. *Id.* We may not on appeal "try the case *de novo,* nor resolve conflicts in evidence...." *Gaffney v. Bowen,* 825 F.2d 98, 100 (6th Cir.1987).   Here, the ALJ considered all the medical evidence and determined that claimant could perform unskilled work at all exertional levels.   It is the ALJ's place, and not the reviewing court's, to "resolve conflicts in evidence." *Gaffney,* 825 F.2d at 100. Based on review of the record, the ALJ's RFC determination is supported by substantial evidence.

**Conclusion**

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying disability benefits be affirmed. After considering the record as a whole, the court questions the basis for an appeal of the agency's decision and advises plaintiff's counsel that the making of frivolous or meritless objections, may subject him to sanctions.

- 13 -

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

<u>s/Virginia M. Morgan</u>
Virginia M. Morgan
United States Magistrate Judge

Dated: January 8, 2010

- 14 -

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 8, 2010.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan